# EXHIBIT A



SUPREME COURT
OF
BRITISH COLUMBIA
**S E A L**
*05-Aug-25*

Vancouver

REGISTRY

*Court File No.* **VLC-S-S-255851**

NO. _____
VANCOUVER REGISTRY

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

BETWEEN:

CTS RESEARCH, INC.

PLAINTIFF

AND:

ZACHARY STORM WILLIAMS

DEFENDANT

**NOTICE OF CIVIL CLAIM**

**This action has been started by the Plaintiff for the relief set out in Part 2 below**.

If you intend to respond to this action, you or your lawyer must

(a)     file a Response to Civil Claim in Form 2 in the above-named registry of this court within the time for Response to Civil Claim described below, and

(b)     serve a copy of the filed Response to Civil Claim on the Plaintiff.

If you intend to make a counterclaim, you or your lawyer must

(a)     file a Response to Civil Claim in Form 2 and a Counterclaim in Form 3 in the above-named registry of this court within the time for Response to Civil Claim described below, and

(b)     serve a copy of the filed Response to Civil Claim and counterclaim on the Plaintiff and on any new parties named in the Counterclaim.

JUDGMENT MAY BE PRONOUNCED AGAINST YOU IF YOU FAIL to file the Response to Civil Claim within the time for Response to Civil Claim described below.

**TIME FOR RESPONSE TO CIVIL CLAIM**

A Response to Civil Claim must be filed and served on the Plaintiff,

(a)     if you reside anywhere in Canada, within 21 days after the date on which a copy of the filed Notice of Civil Claim was served on you,

(b)     if you reside in the United States of America, within 35 days after the date on which a copy of the filed Notice of Civil Claim was served on you,

(c)     if you reside elsewhere, within 49 days after the date on which a copy of the filed Notice of Civil Claim was served on you, or

(d)     if the time for Response to Civil Claim has been set by order of the court, within that time.

**CLAIM OF THE PLAINTIFF**

**PART 1:      STATEMENT OF FACTS**

<u>Overview</u>

1.      The Plaintiff, CTS Research, Inc. ("**CTS**"), sues the Defendant, Zachary Storm Williams ("**Williams**"), for conspiring with others to launch and execute a coordinated smear campaign to harm the reputation of CTS (seemingly as well as others) by spreading false and defamatory information about them.

<u>The Parties</u>

2.      CTS is a global investigative firm incorporated under the laws of New York.

3.      Williams is an individual ordinarily residing at Unit #2202 - 1238 Melville Street, Vancouver, BC  V6E 4N2.

<u>The Conspiracy and the Smear Campaign</u>

4.      On specific dates and at specific locations and through specific communications to be further particularized before trial, Williams and other persons to be identified before trial entered into an agreement (the "**Conspiracy**") to launch and execute a coordinated smear

campaign against CTS (along with such others as may be identified before trial) (the "**Smear Campaign**").

5.      All participants in the Conspiracy and the Smear Campaign cannot presently be fully and accurately identified by CTS, due in material part to the identity and information masking features utilized by the participants in the Conspiracy and the Smear Campaign on social media platforms.

6.      Subject to confirmation of the identities of all participants in the Conspiracy and Smear Campaign through discovery, the participants identified to date include, *inter alia*: Najee Ramsey (Social Media Handle: hennyhardaway); Anthony Brent Gray (Social Media Handle: ABGray); Jesicca Alisha Lewis (Social Media Handle: Ah_lee_shuh); Cherelle T. Blaize (Social Media Handle: AiokiNagato); Ali Roland McGinnis (Social Media Handle: AliRoland); Catharine Darst Knight (Social Media Handle: Boigirl88); Bernice E. King (Social Media Handle: ClassyMrsKing); Dwania Phonia (Social Media Handle: ComeWithFacts); Damien Vazquez (Social Media Handle: damedoller); Diana Coohill Wallace (Social Media Handle: DianaWallace888); Naadira Smith (Social Media Handle: Dirathedoll); Ditto Music (Given Name Presently Unknown, and Social Media Handle: dittomusic); Livingston Allen a/k/a Kevin Eric Johnson (Social Media Handle: DJAkademiks/Akademiks TV); Dominick McGee (Social Media Handle: Dom_Lucre); Dominick Dontae Clarke (Social Media Handle: Domthgreat); Dustin Edward Mills (Social Medial Handle: dustinemills24); Grace Ajo (Social Media Handle: empressive); Essence Trenai Lewis (Social Media Handle: Essence_x33); Jo Sins (Social Media Handle: fendersingh); Patricia Jones (Social Media Handle: HarrietEve9); Mfundo Herman Mahlangu (Social Media Handle: HermaineM); Brenda Amaya a/k/a Brenda Osei-Boadi (Social Media Handle: Itsthatchck); Jonathan Schenck (Social Media Handle: JInvestor33); Jose Luis Morales Pena (Social Media Handle: JLMNoticias); Joshua Harris (Social Media Handle: Joshing__); Karen Nicole Attiah (Social Media Handle: karenattiah); Leslie Redden (Social Media Handle: KatTalesTV); Katiana J. Polanco (Social Media Handle: kayont0p); Afrah Mohamed (Social Media Handle: keep6ixsolid); Kemp Parchment (Social Media Handle: KempireDaily); Kody Morgan (Social Media Handle: Kodybuxaplenty / Bodakyellow00); Lavendar Rochelle Hibbler (Social Media Handle: lavendarrochelle); Nhlamulo Baloyi (Social Media Handle: LavidaNOTA); Ameer Hasan Loggins (Social Media Handle: leftsentthis); Xavier Santino Dixon (Social Media Handle:

lexsupertube); Sato Edoimioya (Social Media Handle: Lurdhavemercy); Matthew Wallace (Social Media Handle: mattwallace888); Meredith Hope Raney (Social Media Handle: meredithhoperaney); Michael Andreas Thompson (Social Media Handle: Mikeartworks); Elmonte Jones (Social Media Handle: Monteiigobay); Eric Leshonne Washington (Social Media Handle: Mr1Stacc / Coach1Stacc); Kayleigh Marion Havens (Social Media Handle: MsKayKayX); Rasheena McComb (Social Media Handle: mssheenabelle); Tomeka Leeann Hickman (Social Media Handle: Mz_koko_babii); Danaysia M. Davis (Social Media Handle: Naysianiccole); Nicole Odom (Social Media Handle: Nicole.Everything); Uchechukwu "Uche" - Alphonsus Chiedozi (Social Media Handle: OfficialUche);   TaMia Simmons (Social Media Handle: Ohshitits3); Brandon Pittman (Social Media Handle: Pitt1623); Marquise Tyree Hardwick (Social Media Handle: Q4quise / Keep Culture Alive); Camille Alta Janey Haile (Social Media Handle: Queenajaay); Dwania P. Dennis (Social Media Handle: RealFeeDEe); Belinda Pemble (Social Media Handle: ResearchYeshua); Tyress Dontel Bush (Social Media Handle: Ressy_B); Ronnie Sneed (Social Media Handle: RGTitan901); Rina Evans-Meyers (Social Media Handle: Rinadevans78); Angela Woodruff (Social Media Handle: Rosequartzdiva); Dominique Richardson (Social Media Handle: SagittariusNik); Samatha Jean Bryant (Social Media Handle: samanthajbryan1); Samson Crouppen (Social Media Handle: samsoncrouppen1); Shannon Barr (Social Media Handle: ShannonBar92900); Trena S. Lloyd (Social Media Handle: sharrellsworld); Shaun Patrick Attwood (Social Media Handle: shaunattwood); Sherrell Jackson (Social Media Handle: sherrelli); Souvana Williamson (Social Media Handle:souvana_); Stephanie Trenkamp (Social Media Handle: steph-trenkamp); Derrick Lee Wilkerson (Social Media Handle: stoppfeenin); Justin Cartisano (Social Media Handle: Suitsm@gmail.com); Serneria Solomon (Social Media Handle: SunNeeSweet33); Susan Amala Ekpunobi (Social Media Handle: TheAmalaEkpunobi); Wainsworth Hall (Social Media Handle: Uniquemeccacrew); Latasha Transrina Kebe (Social Media Handle: unwinewithtashak); Wesley Tyler Stapleton (Social Media Handle: Wescottlaurent); and Raymond Martinez (Social Media Handle: writtenbyray).[1]

---

[1]  Discovery to confirm the true identities of all participants in the Conspiracy and Smear Campaign will be sought as expeditiously as is possible.

7.      The purpose and intent of the Conspiracy and the Smear Campaign was—and still is—to harm the reputation of CTS (and such other targets as may be identified before trial) by spreading false and defamatory information about them.

8.      The parties to the Conspiracy and the Smear Campaign have taken concerted action pursuant to their agreement, including by engaging paid influencers and online bots[2] to further their purpose and intent by spreading false information about their target(s).

9.      As described in greater detail below, on specific dates and at specific locations and through specific communications to be further particularized before trial, Williams has joined and participated in the Conspiracy and the Smear Campaign.

**The Florida Lawsuit**

10.     In May 2025, CTS was sued in the United States District Court for the Southern District of Florida by third parties, in a lawsuit captioned *Hadley v. Perez et al.*, Case No. 25-cv-22162 (the "**Florida Lawsuit**").

11.     In the Florida Lawsuit, CTS is falsely accused of committing, and conspiring to commit, certain torts under U.S. law.

12.     CTS has strenuously denied and sought to summarily dismiss all allegations against it in the Florida Lawsuit.

13.     Nevertheless, the Conspiracy and the Smear Campaign have included false and defamatory statements about CTS relating the subject matter of the Florida Lawsuit.

**Williams' Defamatory Statements**

14.     Williams is a male escort and/or adult entertainer.

---

[2] Bots are automated software applications designed to perform repetitive tasks over a network.

15.    Williams has an account on the social media platform X, which enables users to post text, photos, videos, and other information to a wide audience.

16.    Williams's X account is named "@vegetabarb" (the "**Account**").

17.    Anyone can access the Account and see its posts by visiting https://x.com/vegetabarb.

18.    As part of the Conspiracy and the Smear Campaign described above, one or more of the parties to the Conspiracy have agreed to pay Williams, or otherwise provide things of value to Williams, to make false and defamatory statements about CTS on the Account (the "**Defamatory Statements**").

19.    The Defamatory Statements include, but are not limited to, the following:

[*Continued on next page*]

(a)    On June 22, 2025, Williams posted on the Account that CTS "does not seem to have any mandatory licensing", is "built off retired cops and people with law enforcement connections", and provides "harassment for hire":

Defamatory Statement #1 (June 22, 2025)

([https://x.com/vegetabarb/status/1936653474433028296](https://x.com/vegetabarb/status/1936653474433028296))



(b)    On June 28, 2025, Williams posted on the Account that CTS has been "gladly taking money" to carry out "disgusting dirty work!" and "carry[ing] out this abuse":

Defamatory Statement #2 (June 28, 2025)

(https://x.com/vegetabarb/status/1939066089914368415)



    (c)      On July 18, 2025, Williams posted on the Account that CTS engaged in "illegal surveillance" and "relentless harassment" through "unlicensed investigators":

Defamatory Statement #3 (July 18, 2025)

(https://x.com/vegetabarb/status/1946263350406791173)



…

➡️ CTS Research, Inc. (New York Corporation)**
- **Role**: Private investigation firm hired by Perez to stalk the Hadleys.
- **Alleged Actions**:
  - Deployed unlicensed investigators, like Amauris Bastidas, to follow the Hadleys 24/7 with firearms, parking across from their Homestead home and causing fear.
  - Ignored police warnings about unlicensed surveillance, leading to PTSD and lost contracts.
- **Claims Against**: Negligence, IIED.
-Inflicted severe emotional distress and economic harm.

…



20.     Williams made the Defamatory Statements while acting together and in concert with the other parties to the Conspiracy.

21.     In June 2025, parties to the Florida Lawsuit made false and defamatory social media posts about CTS that Williams then amplified through the Defamatory Statements.

22.     This coordinated conduct significantly increased the harm to CTS, and furthered the Conspiracy and Smear Campaign.

23.     The false and defamatory posts made by parties to the Florida Lawsuit that were amplified by Williams' Defamatory Statements include, but are not limited to, the following:

[*Continued on next page*]

**False and Defamatory June 7, 2025 Post**



**False and Defamatory June 7, 2025 Post**



**False and Defamatory Post**



**False and Defamatory June 25, 2025 Post**



24.    The Defamatory Statements are false.

25.    The Defamatory Statements are defamatory in the sense that they would tend to lower CTS's reputation in the eyes of a reasonable person.

26.    In their natural and ordinary meaning, including their implied meanings, the Defamatory Statements convey the following false and defamatory meanings:

    (a)    that CTS lacks necessary licensing to operate its business;

    (b)    that CTS lacks appropriately trained personnel;

    (c)    that CTS engages in harassment;

    (d)    that CTS engages in illicit activities; and

    (e)    that CTS commits abuse.

27.    The Defamatory Statements refer to CTS, either expressly or implicitly.

28.    Williams published the Defamatory Statements to persons beyond CTS via posting on the Account.

29.    Williams made the Defamatory Statements for the predominant purpose of harming CTS.

30.    Williams made the Defamatory Statements with malice. He knew or ought to have known that the Defamatory Statements were false and would harm CTS's reputation, or in the alternative acted with reckless indifference as to whether the Defamatory Statements were false and would harm CTS's reputation.

31.    In participating in the Conspiracy and Smear Campaign and making the Defamatory Statements, Williams engaged in high-handed, malicious, and outrageous conduct.

32.    Williams participated in the Conspiracy and Smear Campaign and made the Defamatory Statements while ordinarily residing in British Columbia.

33.     The Defamatory Statements were published to persons in British Columbia (and elsewhere).

34.     CTS asked Williams to remove the Defamatory Statements, but he refused.

**Resulting Losses**

35.     The Conspiracy and the Smear Campaign, including Williams's participation in them by making the Defamatory Statements, have caused and continue to cause serious harm to CTS's reputation. CTS has suffered losses as a result.

36.     CTS does not know the full extent of the resulting losses at this time. CTS will provide full particulars before trial.

37.     CTS suffered loss in British Columbia (and elsewhere).

**PART 2:     RELIEF SOUGHT**

38.     CTS seeks the following relief against Williams:

    (a)     general damages;

    (b)     special damages;

    (c)     punitive damages;

    (d)     an interlocutory injunction

        (i)     requiring Williams to remove the Defamatory Statements from the Account pending resolution of this proceeding; and

        (ii)     prohibiting Williams from publishing any further defamatory statements on the Account (or otherwise) relating to or implicating in any way CTS pending resolution of this proceeding;

    (e)     a permanent injunction prohibiting Williams from publishing any further defamatory statements on the Account (or otherwise) relating to or implicating in any way CTS;

(f)     costs of this action;

(g)     interest under the *Court Order Interest Act*, R.S.B.C. 1996, c. 79; and

(h)     such other relief as this Court may consider just.

**PART 3:     LEGAL BASIS**

39.     CTS relies on the *Libel and Slander Act*, R.S.B.C. 1996, c. 263, the *Court Jurisdiction and Proceedings Transfer Act*, S.B.C. 2003, c. 28, the common law of defamation and civil conspiracy, and such other legal bases as counsel may advise and this Court may accept.

**<u>Defamation</u>**

40.     Williams committed the tort of defamation against CTS.

41.     The Defamatory Statements were defamatory in the sense that they would tend to lower CTS's reputation in the eyes of a reasonable person.

42.     The Defamatory Statements referred to CTS, either expressly or implicitly.

43.     CTS published the Defamatory Statements to persons beyond CTS via posting on the Account.

44.     The Defamatory Statements have caused and continue to cause serious harm to CTS's reputation. CTS has suffered losses as a result.

45.     CTS is entitled to damages to compensate it for these losses.

**<u>Civil Conspiracy (Conspiracy to Injure and Unlawful Conduct Conspiracy)</u>**

46.     Williams committed the tort of civil conspiracy against CTS.

47.     The co-conspirators named herein, among others to be identified, entered into an agreement—the Conspiracy—to launch and execute the Smear Campaign against CTS (along with such others as may be identified in advance of trial).

48.    The purpose and intent of the Conspiracy and the Smear Campaign was—and still is—to harm the reputations of CTS (and such other victims as may be identified in advance of trial) by spreading false and defamatory information about them.

49.    Williams joined and participated in the Conspiracy and the Smear Campaign.

50.    The parties to the Conspiracy and the Smear Campaign, including Williams, have taken concerted action pursuant to their agreement, including—in Williams's case—by accepting payment, in cash or other things of value, to harm CTS by spreading false and defamatory information about it and posting the Defamatory Statements.

51.    Williams intended to cause loss to CTS and knew or ought reasonably to have know that his actions would cause loss to CTS.

52.    The Conspiracy and the Smear Campaign, including Williams's participation in them, have caused CTS to suffer losses.

53.    CTS is entitled to damages to compensate it for these losses.

### **Injunctions**

54.    The Court should grant an interlocutory injunction (1) requiring Williams to remove the Defamatory Statements from the Account pending resolution of this proceeding; and (2) prohibiting Williams from publishing any further defamatory statements on the Account (or otherwise) relating to or implicating in any way CTS pending resolution of this proceeding.

55.    This interlocutory injunction is appropriate because CTS's claims have *prima facie* merit (including strong *prima facie* merit), denying an interlocutory injunction would cause CTS to suffer irreparable harm in the form of irreparable reputational damage, and the balance of convenience favours an interlocutory injunction.

56.    The Court should grant a permanent injunction prohibiting Williams from publishing any further defamatory statements on the Account (or otherwise) relating to or implicating in any way CTS.

57.    This permanent injunction is appropriate because it is necessary to adequately protect CTS's reputation, and absent an injunction there is reason to believe Williams will make further defamatory statements on the Account or otherwise.

**Punitive Damages**

58.    Williams engaged in high-handed, malicious, and outrageous conduct, including but not limited to deliberately making false statements to harm CTS's reputation.

59.    Punitive damages are warranted.

**Jurisdiction**

60.    The B.C. courts have jurisdiction over this matter.

61.    Williams ordinarily resides in British Columbia.

62.    Williams committed the torts in British Columbia.

63.    The Defamatory Statements were published to persons in British Columbia (and elsewhere).

64.    CTS suffered loss in British Columbia (and elsewhere).

**PLAINTIFF'S ADDRESS FOR SERVICE:**

Address for service:                      McCarthy Tétrault LLP
                                          Barristers & Solicitors
                                          Suite 2400, 745 Thurlow Street
                                          Vancouver BC V6E 0C5
                                          **Attention:      CONNOR BILDFELL**


Email address for service:                cbildfell@mccarthy.ca


Place of trial:                           Vancouver

The address of the Registry is:                    The Law Courts
                                                   800 Smithe Street
                                                   Vancouver, BC

DATED:   August 5, 2025                            _____
                                                   **CONNOR BILDFELL**
                                                   Counsel for CTS


Rule 7-1 (1) of the Supreme Court Civil Rules states:

1.      Unless all parties of record consent or the court otherwise orders, each party of record to an action must, within 35 days after the end of the pleading period,

        (a)      prepare a list of documents in Form 22 that lists

                 (i)      all documents that are or have been in the party's possession or control and that could, if available, be used by any party at trial to prove or disprove a material fact, and

                 (ii)     all other documents to which the party intends to refer at trial, and

        (b)      serve the list on all parties of record.

_____

**APPENDIX**

**PART 1:**    **CONCISE SUMMARY OF NATURE OF CLAIM:**

1.    Defamation and civil conspiracy.


**PART 2:**    **THIS CLAIM ARISES FROM THE FOLLOWING:**

A personal injury arising out of:

        [ ]    a motor vehicle accident

        [ ]    medical malpractice

        [ ]    another cause

A dispute concerning:

        [ ]    contaminated sites

        [ ]    construction defects

        [ ]    real property (real estate)

        [ ]    personal property

        [ ]    the provision of goods or services or other general commercial matters

        [ ]    investment losses

        [ ]    the lending of money

        [ ]    an employment relationship

        [ ]    a will or other issues concerning the probate of an estate

        [X]    a matter not listed here

**PART 3:**    **THIS CLAIM INVOLVES:**

        [ ]    a class action

        [ ]    maritime law

        [ ]    aboriginal law

        [ ]    constitutional law

        [ ]    conflict of laws

[x]    none of the above

[ ]    do not know

**PART 4:**    **ENACTMENTS**

*Libel and Slander Act*, R.S.B.C. 1996, c. 263; *Court Jurisdiction and Proceedings Transfer Act*, S.B.C. 2003, c. 28.